UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 08-CIV-80119-MARRA/JOHNSON

JANE DOE NO. 2,

    Plaintiff,

vs.

JEFFREY EPSTEIN,

    Defendant.
_____/

Related cases:
08-80232, 08-08380, 08-80381, 08-80994,
08-80993, 08-80811, 08-80893, 09-80469,
09-80591, 09-80656, 09-80802, 09-81092
_____/

**Defendant's Sur-Reply In Connection With Plaintiffs', Jane Does 2-7, Motion For Protective Order (DE 226) and Reply (DE 266) With Incorporated Memorandum Of Law, And Pursuant To This Court's Order (DE 285)**

Defendant, JEFFREY EPSTEIN ("Epstein" or "Defendant"), by and through his undersigned attorneys, hereby files his Sur-Reply In Connection With Plaintiffs', Jane Does 2-7, Motion For Protective Order (DE 226) and Plaintiffs' Reply (DE 266), With Incorporated Memorandum Of Law, And Pursuant To This Court's Order (DE 285). In support, Mr. Epstein states as follows:

### I.    Introduction & Argument

1.    Plaintiffs have attempted to prevent discovery relating to their medical, psychological, criminal and employment histories, as well as their general backgrounds. Now Plaintiffs wish to prevent Epstein from investigating the very claims they assert against him by asking this court to stop Epstein's defense team from learning information about the Plaintiffs that would contradict their claims and the damages they seek to

1

recover. In an attempt to halt any investigation, Plaintiffs claim "they have great fear and concern [of] their identities being disclosed as Epstein's victims. . . ." however, they do not state that investigators are identifying them as said victims, or identifying them with Jeffrey Epstein (emphasis added). (DE 266, p.2)

2.  Notably, Plaintiffs have several preexisting and diagnosed conditions for which they now attempt to pawn off on Epstein in an effort to increase their damages. See infra. For instance, prior to any of their alleged encounters with Epstein, certain Plaintiffs have been raped, sexually abused, molested and physically and verbally abused. See *infra*. Some of them have been diagnosed with post traumatic stress disorder or obsessive compulsive disorder, and some have suicidal thoughts and/or have attempted suicide on more than one occasion. Moreover, some of the Plaintiffs have witnessed close friends or family members commit suicide. While the above incidents are nothing less than tragic, the impact of those incidents on each of the Plaintiffs must be taken into consideration with the claims they make and the damages they seek from Epstein.

3.  Certainly, this court cannot expect or force Epstein to accept what Plaintiffs choose to provide at deposition or what they filter through discovery without further investigation. Requiring Epstein to do so would be tantamount to giving the Plaintiffs the key to the bank in that Epstein will not be afforded the right to investigate the claims made against him.

4.  Plaintiffs' delay tactics are largely out-of-control in that same have delayed the timely progress of this case and resulted in several unnecessary discovery motions and judicial resources. Plaintiffs continue to attempt to prevent discovery at every turn, and their next step will likely be to prevent Epstein from participating in

2

depositions in connection with the cases that Plaintiffs have filed against him.

### (a) Plaintiffs' Reply Memorandum In Support Of Their Motion For Protective Order

5. On August 14, 2009, Plaintiffs filed their Reply Memorandum in Support of Motion for Protective Order (DE 266). Plaintiffs claim in their Reply that it would be of little relevance as to whether Plaintiffs gave "older-rich guys" "massages" for money and, as such, Defendant's investigators should be precluded from learning that information all together. (DE 266, p. 6) Is Plaintiffs' counsel serious? Plaintiffs seek damages for allegedly giving massages that purportedly transformed into a sexual assault. Is it not relevant whether Plaintiffs have given massages or massages of a sexual nature for money in the past? Will that not lead to the discovery of admissible evidence? Is it not relevant whether Plaintiffs bragged to others about making money for allegedly giving older men massages, whether they worked in the proverbial "jack shack" and whether they convinced their friends to do the same. Assuming Plaintiffs provided massages of a sexual nature to older men for money and that they did work in "jack-shacks" and/or as prostitutes, that information is relevant to this action in that Plaintiffs are seeking millions of dollars for psychological injuries, which may have been caused by acts other than those allegedly caused by Epstein.

6. This is a civil case, and consent goes to the heart of Plaintiffs' damages claims. If Plaintiffs were promiscuous and prostituted themselves out for money, does this court believe that Plaintiffs would provide Epstein with that information in an effort to prove his affirmative defense of consent or to limit Plaintiffs' damages? Personal injury cases and the damages Plaintiffs claim are disproved everyday by virtue of investigation and surveillance. Here, Plaintiffs seek millions of dollars in personal injury

3

damages for, among other things, "confusion, shame, humiliation, embarrassment, and severe psychological and emotional injuries." See Amended Complaint. As such, Epstein is permitted to conduct the appropriate investigation to determine whether other events in the Plaintiffs' lives have caused their psychological problems separate and apart from what they alleged in their respective Complaints. As such, this court should not allow Plaintiffs to hide behind the cloak of their allegations in an effort to prevent discovering their true backgrounds and thus disproving the claims they allege against Epstein in these civil cases.

7. Next, Plaintiffs claim they are worried about their identities being revealed by Epstein's investigators; however, the declarations cited below do NOT state that Epstein's investigators have affiliated Plaintiffs with Jeffrey Epstein, revealed that they are alleged sexual battery victims, or that Plaintiffs initiated specious civil lawsuits against Jeffrey Epstein.[1] Moreover, several third-party subpoenas have been served and Plaintiffs' counsel has filed Cross-Notices of those Non-Party Depositions on individuals without redacting Epstein's name. Plaintiffs' counsel has not complained to their colleagues about taking such an approach. Is it Plaintiffs' counsel's contention that when they depose third parties, they will never identify Jane Doe 2-7 or associate them with Epstein? How else will Plaintiffs prove their damages? Clearly, Plaintiffs seek only to limit Epstein's discovery, not their own.

8. After the filing of the Reply, Plaintiffs filed new declarations. In particular, Plaintiffs attach to or cite in their Reply the declaration of Jane Doe 4 (dated

---

[1] Epstein's investigators have thus far taken a conservative investigative approach. However, that is not to say that a more aggressive investigative approach relative to the very claims Plaintiffs allege is improper so long as Epstein's investigators remain, as they have, professional. How else is Epstein going to learn the veracity of the allegations Plaintiffs allege against him.

4

August 14, 2009), the declaration of Jane Doe 7 (dated August 14, 2009) and the declaration of Jane Doe 4's sister (Y.B.'s declaration dated August 18, 2009). Once again, none of the declarations provide that Epstein's investigators have identified them as alleged sexual assault victims or affiliate them in anyway with Jeffrey Epstein.

### (i) The Declaration of Jane Doe Number #4

9. As to Jane Doe #4's declaration, investigators interviewed her former boyfriend, Preston Vinyard, by telephone. Mr. Vinyard commented that he knew the investigators wanted information about Jane Doe #4 without the investigators even mentioning Jane Doe's name. Importantly, Jane Doe #4 provided Mr. Vinyard's name to her expert, Gilbert Kliman, M.D. In fact, she stated in the interview with Dr. Kliman that Mr. Vinyard was not a good influence on her and that he was an alcoholic. See **Exhibit "A"**. In addition, on 9/20/04, a battery report was filed involving Jane Doe #4 and Mr. Vinyard in reference to an argument where he grabbed her by the neck and began spitting on her and calling her a cheater. Jane Doe #4 also tried to bite Mr. Vinyard. See **Exhibit "B"**. Next, a repeat domestic violence case was filed on 9/21/04 and was closed on a Final Judgment for Protection Order on 10/6/04. Apparently, Mr. Vinyard was physically and verbally abusive to Jane Doe Number 4. See **Exhibit "C"**. On 10/6/04, an Order of Protection was issued against Vinyard and was enforce until 10/6/05. See **Exhibit "D"**. Mr. Vinyard was also arrested on 12/24/03 and charged with reckless driving and leaving the scene of an accident with damages after he and Jane Doe #4 hit a tree and fled the scene after leaving a party. See **Exhibit "E"**. On 10/31/04, officers entered Jane Doe #4's home in connection with a disturbance between her and Mr. Vinyard. Officers found Jane Doe #4 without a top on and advised her to get dressed;

however, she kept yelling at police demanding that they leave her house. See **Exhibit "F"**. On 11/31/04, Mr. Vinyard was arrested for violation of domestic violence injunction order for repeat violence against Jane Doe #4. Apparently, Jane Doe #4 and Vinyard were arguing in a cab over not having money to pay the fair and Mr. Vinyard hit Jane Doe #4. See **Exhibit "G"**.

10. In addition, Jane Doe Number #4 advised Dr. Kliman that her boyfriend (Chris) died in a car accident involving a DUI and her best friend (Jen) died in an automobile accident involving drinking. See **Exhibit "H."** In 2003, Jane Doe #4 sought counseling because of a dysfunctional home situation, particularly with her father. Finally, Jane Doe #4 described herself as angry, bitter, disliking herself, depressed, and having problems with her body image – all pre-Epstein. See *supra*.

11. Clearly, Mr. Vinyard is a person Epstein is entitled to interview by and through his investigators. Mr. Vinyard was contacted and he provided information to Epstein's investigators. The telephone interview lasted approximately 20 minutes, and Mr. Vinyard ended the telephone call and offered to call investigators back. To date, Mr. Vinyard has not contacted the investigators.

### (ii) The Declaration of Y.B., Jane Doe #4's Sister

12. On August 8, 2009 at approximately 2:40 p.m., investigators visited with Y.B. and her husband at their Port St. Lucie address. Epstein's investigators announced that they wished to speak to Y.B. about Jane Doe #4, and provided Y.B. a state issued private investigator's license and business card. Y.B. stated that she would have to speak to Jane Doe #4 before discussing anything with the investigators. Y.B. appeared more concerned with how investigators obtained her public address because Y.B. thought

her address was non-public due to her husband's position of employment, which appeared to be with a particular fire department. Investigators asked Y.B to discuss her sister, Jane Doe #4; however, at approximately 2:49 p.m., Y.B. abruptly ended the conversation and led her husband back inside the home. Nothing further was discussed, and nothing was revealed during this nine (9) minute conversation.

### (iii)  The Declaration of Jane Doe #7

13.  Jane Doe #7's declaration is telling. First, she lists several questions that investigators allegedly asked three of her friends:

(a) Was she promiscuous in high school;

(b) What was her reputation in high school;

(c) How many guys has she been with;

(d) Did she date older, rich guys;

(e) Did she give massages for money; and

(f) Who were her friends in high school and what is their contact information

14.  Clearly, the above questions are basic background questions and cannot be limited without violating Epstein's constitutional due process rights to defend himself.

15.  Next, Jane Doe #7 claims that investigators mentioned Haley Robson, but fails to state what references were made relative to Haley Robson. Is it Jane Doe #7's contention that investigators cannot ask others whether they ever heard of Haley Robson? Such a contention would be silly given the fact that Jane Doe #7 herself makes allegations regarding Haley Robson in paragraph 13 of her Amended Complaint. Therefore, it is imperative know whether Jane Doe #7 ever spoke about Haley Robson and, if so, what did Jane Doe #7 say about Haley Robson. Moreover, Haley Robson's

7

affidavit tells a different story; that is, Jane Doe #7 approached her at a local bar and discussed Jeffrey Epstein with her in a public forum, *i.e.*, Jane Doe #7 discussed her lawsuit with Haley Robson in public, with others. See **Exhibit "I", Robson Affidavit.** Even so, an elementary review of the alleged questioning by the investigators as set forth in Jane Doe #7's declaration shows that same is relevant and may lead to the discovery of admissible evidence. Surely, Jane Doe #7 is not being heard to argue that information concerning Haley Robson is not relevant to this action when her complaint makes allegations to the contrary.

16. Moreover, on October 4, 2005, Jane Doe #7 gave a taped interview to the police under oath, which directly conflicts with the allegations in her Amended Complaint **Exhibit "J"**. In that police interview, Jane Doe # 7 stated:

(a) that she was introduced to Epstein by Haley Robson;

(b) that she went to Epstein's home with Haley Robson the first time;

(c) that she gave Epstein a massage with her clothes on the second time she visited the home;

(d) that she only went to Epstein's home 2 times;

(e) that when she massaged Epstein he was <u>not</u> naked and he never removed his towel;

(f) that she did not touch his private areas and he did not ask her to do same;

(g) that he did not touch her in her private areas; and

(h) that after the second trip to the home she never went back.

17. Contrast the above with the allegations in the Amended Complaint:

(a) Paragraph 13 - during the first massage, Epstein "sexually assaulted" her and "masturbated;"

(b) Paragraph 14 - Jane Doe #7 "…returned on many occasions to the Palm

8

Beach mansion to provide Epstein with massages for money. On those occasions, Epstein engaged in sexual contact and activity with Jane, which included, among other things, Epstein touching [her] breasts, placing a vibrator on her vagina and masturbating himself. This sexual abuse continued over a period of approximately 18 to 24 months."

18. In her answers to interrogatories, Jane Doe #7 states that she went to the Palm Beach Mansion 8 to 10 times and that she brought friends on 2 separate occasions and was paid $200 per friend, each of which directly conflicts with the statement she gave to police. See *supra*.

19. As to Dr. Kliman, Jane Doe #7 told him that she came back to the home for a second massage with Epstein, and Epstein asked if he could see her bra and asked questions regarding her sex life. She also told Dr. Kliman that during this second massage, she took her shirt off, gave him a massage in her bra and that he masturbated under a towel. She also stated that she believes she visited Epstein 8 times and that the last time or one of the last times she went there Epstein was aggressive, grabbed her butt, tried to feel parts of her body, pulled her bra down, exposed her nipples and touched her breasts which, once again, is in direct conflict with what Jane Doe #7 told police under oath.

20. Based upon the foregoing, it is clear that the basic questions asked of the three non-parties were relevant and reasonably calculated to lead to the discovery of admissible evidence. Moreover, whether any of the individuals ever heard of Haley Robson by and through Jane Doe #7 is also relevant in that any information obtained may also lead to the discovery of admissible evidence, which may contradict the allegations Jane Doe #7 has made against Epstein much like Jane Doe #7 contradicts herself in the statements she made to police and the allegations she subsequently made in the Amended

Complaint.

### (iv) The Declaration of Jane Doe #6

21. Jane Doe #6's declaration requests that Epstein not speak to Jane Doe's former employers relative to her background. However, Jane Doe # 6's background is directly relevant to this action and the damages she seeks to recover from Epstein. For instance, according to interrogatory answer number 7, Jane Doe #6 was diagnosed with PTSD following a car accident in 2003. On 4/10/05, Jane Doe #6 witnessed a friend enter a green transformer box, play with the wires and electrocute himself. See **Exhibit "K"**. On 4/13/06, Jane Doe #6's mother made a child abuse report, and advised police that Jane Doe #6 and her father had been smoking marijuana together since she was 13. See **Exhibit "L"** Jane Doe #6's mother told police that she tried to help Jane Doe #6 by placing her in Growing Together Treatment Program on 3/10/06 and by having her Baker Acted on 4/7/06. See **Exhibit "L"** Then, on 12/22/06, Jane Doe #6 and her then boyfriend, James Sullivan, got into an argument and he went out into the street and put a gun to his head and killed himself. See **Exhibit "M"**.

22. On 1/31/07, Jane Doe #6 pled guilty to grand theft and burglary, and she pled guilty and was sentenced to a 30 day substance abuse program, 9 months community control and 2 years probation. See **Exhibit "N"**. On 3/09/07, Jane Doe #6 was arrested and on 3/20/07 was ordered to undergo a mental health evaluation. See **Exhibit "O"** On 4/10/07, she was ordered to 32 days in jail and community control until 11/1/07 with probation for 2 years. See **Exhibit "P"**. On August 8, 2007, she was arrested for possession of drug paraphernalia and violated her probation. See **Exhibit "Q"**.

23. Based upon the foregoing and the allegations in the Amended Complaint,

investigating Jane Doe #6's background is directly relevant to this action as it relates to her medical, psychiatric, social and family histories and the damages she seeks to recover.

### (v) Brief Conclusion

24. Here, the number and scope of damages claimed are vast. Preventing Epstein from investigating this case and the claims made concerning some of the pivotal issues in this case would work an injustice by preventing Epstein from being able to defend himself. Even the ASAO contemplated that Epstein ". . .could fight the damages portion [of a lawsuit], which means that, of course, he would be entitled to depositions; of course, he would be entitled to take discovery. . ." and investigate claims. See **Exhibit "R"**, pp. 33-34, June 12, 2009 Transcript.

Wherefore, Epstein requests that this court enter an order denying Jane Doe's 2-7 Motion for Protective Order which seeks to prevent Epstein from investigating the claims made against him and the individual Jane Does that make those claims, and for such other and further relief as this court deem just and proper.

By: _____
MICHAEL J. PIKE, ESQ.
Florida Bar #617296

## Certificate of Service

I HEREBY CERTIFY that a true copy of the foregoing was electronically filed with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the following Service List in the manner specified by CM/ECF on this _8_ day of _Sept_, 2009

Respectfully submitted,

By: _____
ROBERT D. CRITTON, JR., ESQ.
Florida Bar No. 224162
rcrit@bclclaw.com
MICHAEL J. PIKE, ESQ.
Florida Bar #617296
mpike@bclclaw.com
BURMAN, CRITTON, LUTTIER & COLEMAN
515 N. Flagler Drive, Suite 400
West Palm Beach, FL 33401
561/842-2820 Phone
561/515-3148 Fax
(*Counsel for Defendant Jeffrey Epstein*)

## Certificate of Service
## Jane Doe No. 2 v. Jeffrey Epstein
## Case No. 08-CV-80119-MARRA/JOHNSON

Stuart S. Mermelstein, Esq.
Adam D. Horowitz, Esq.
Mermelstein & Horowitz, P.A.
18205 Biscayne Boulevard
Suite 2218
Miami, FL 33160
305-931-2200
Fax: 305-931-0877
ssm@sexabuseattorney.com
ahorowitz@sexabuseattorney.com
*Counsel for Plaintiffs*
*In related Cases Nos. 08-80069, 08-80119, 08-80232, 08-80380, 08-80381, 08-80993, 08-80994*

Richard Horace Willits, Esq.
Richard H. Willits, P.A.
2290 10th Avenue North
Suite 404
Lake Worth, FL 33461
561-582-7600
Fax: 561-588-8819
*Counsel for Plaintiff in Related Case No. 08-80811*
reelrhw@hotmail.com

Jack Scarola, Esq.
Jack P. Hill, Esq.
Searcy Denney Scarola Barnhart & Shipley, P.A.
2139 Palm Beach Lakes Boulevard
West Palm Beach, FL 33409
561-686-6300
Fax: 561-383-9424
jsx@searcylaw.com
jph@searcylaw.com
*Counsel for Plaintiff, C.M.A.*

Brad Edwards, Esq.
Rothstein Rosenfeldt Adler
401 East Las Olas Boulevard
Suite 1650
Fort Lauderdale, FL 33301
Phone: 954-522-3456
Fax: 954-527-8663
bedwards@rra-law.com
*Counsel for Plaintiff in Related Case No. 08-80893*

Paul G. Cassell, Esq.
*Pro Hac Vice*
332 South 1400 E, Room 101
Salt Lake City, UT 84112
801-585-5202
801-585-6833 Fax
cassellp@law.utah.edu
*Co-counsel for Plaintiff Jane Doe*

Isidro M. Garcia, Esq.
Garcia Law Firm, P.A.
224 Datura Street, Suite 900
West Palm Beach, FL 33401
561-832-7732
561-832-7137 F
isidrogarcia@bellsouth.net
*Counsel for Plaintiff in Related Case No. 08-80469*

Robert C. Josefsberg, Esq.
Katherine W. Ezell, Esq.
Podhurst Orseck, P.A.
25 West Flagler Street, Suite 800
Miami, FL 33130
305 358-2800
Fax: 305 358-2382
rjosefsberg@podhurst.com
kezell@podhurst.com

13

Bruce Reinhart, Esq.
Bruce E. Reinhart, P.A.
250 S. Australian Avenue
Suite 1400
West Palm Beach, FL 33401
561-202-6360
Fax: 561-828-0983
ecf@brucereinhartlaw.com
*Counsel for Defendant Sarah Kellen*

Theodore J. Leopold, Esq.
Spencer T. Kuvin, Esq.
Leopold-Kuvin, P.A.
2925 PGA Blvd., Suite 200
Palm Beach Gardens, FL 33410
561-684-6500
Fax: 561-515-2610
*Counsel for Plaintiff in Related Case No. 08-08804*
skuvin@riccilaw.com
tleopold@riccilaw.com

*Counsel for Plaintiffs in Related Cases Nos. 09-80591 and 09-80656*

Jack Alan Goldberger, Esq.
Atterbury Goldberger & Weiss, P.A.
250 Australian Avenue South
Suite 1400
West Palm Beach, FL 33401-5012
561-659-8300
Fax: 561-835-8691
jagesq@bellsouth.net
*Counsel for Defendant Jeffrey Epstein*