UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-CIV-80119-MARRA/JOHNSON

JANE DOE NO. 2,

     Plaintiff,

vs.

JEFFREY EPSTEIN,

     Defendant.

_____/
Related cases:
08-80232, 08-80380, 08-80381, 08-80994,
08-80993, 08-80811, 08-80893, 09-80469,
09-80591, 09-80656, 09-80802, 09-81092

_____/

**<u>OMNIBUS ORDER</u>**

**THIS CAUSE** is before the Court on Defendant's Motion for Reconsideration and/or

Request for Rule 4 Review and Appeal of Portions of the Magistrate's Order (D.E. #282)

and Defendant's Supplementary Brief pursuant to Magistrate's Order Requesting a More

Particularized Showing Re: Fifth Amendment (D.E. #283).

In this case, which has been consolidated for purposes of discovery, Plaintiffs are

former under-age girls who allege they were sexually assaulted by Defendant, Jeffrey

Epstein ("Epstein"), at his Palm Beach mansion home.  The scheme is alleged to have

1

taken place over the course of several years in or around 2004-2005, when the girls in question were approximately 16 years of age.  As part of this scheme, Epstein, with the help of his assistant Sarah Kellen, allegedly lured economically disadvantaged minor girls to his homes in Palm beach, New York and St. Thomas, with the promise of money in exchange for a massage.  Epstein purportedly transformed the massage into a sexual assault.   The three-count Complaint alleges sexual assault and battery (Count I), intentional infliction of emotional distress (Count II), and, coercion and enticement to sexual activity in violation of 18 U.S.C. §2422 (Count III).

In 2008, Epstein entered into a Non-Prosecution Agreement with the United States Attorney General's Office for the Federal Southern District of Florida and the State Attorney's Office for Palm Beach County. Under the terms of the Non-Prosecution Agreement, any criminal prosecution against Epstein is deferred as long as he abides by the certain terms and conditions contained therein. If at any time the United States Attorney's Office has reason to believe Epstein is in breach of the Agreement, it need only provide Epstein's counsel with notice of the breach and then move forward with Epstein's prosecution.  Accordingly, the undersigned would agree with Epstein's statement at page 4 of its Response, that the fact there exists a Non-Prosecution Agreement does not mean that Epstein is free from future criminal prosecution, and that in fact, "the threat of prosecution is real, substantial, and present." Id.

On August 4, 2009, the undersigned entered an Order on Plaintiff's Motion to Compel as to certain requests to which Defendant Epstein was asserting a Fifth Amendment privilege. By the two motions referred to above Epstein is seeking reconsideration of a portion of the Order as it relates to Interrogatory numbers 7 and 11

2

(D.E. #282) and pursuant to the Court's directive has submitted a more particularized showing as to why Epstein's Fifth Amendment privilege as to Request for Production Numbers 10, 11, 19 and 21 should be sustained (D.E. #283).

The Fifth Amendment serves as a guarantee against testimonial compulsion and provides, in relevant part, that "[n]o person...shall be compelled in any Criminal Case to be a witness against himself." Id.  In practice, the Fifth Amendment's privilege against self-incrimination "permits a person not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." Edwin v. Price, 778 F.2d 668, 669 (11th Cir. 1985)(citing Lefkowitz v. Turley, 414 U.S. 70, 77 (1973)).  The privilege is accorded "liberal construction in favor of the right it was intended to secure,"  Hoffman v. United States, 341 U.S. 479, 486 (1951), and extends not only to answers that would in themselves support a criminal conviction, but extends also to those answers which would furnish a link in the chain of evidence needed to prosecute the claimant for a crime.  Id.; Blau v. United States, 340 U.S. 159 (1950).  Thus, information is protected by the privilege not only if it would support a criminal conviction, but also in those instances where "the responses would merely 'provide a lead or clue' to evidence having a tendency to incriminate." United States v. Neff, 615 F.2d 1235, 1239 (9th Cir.), cert. denied, 447 U.S. 925 (1980).

The Fifth Amendment's privilege against self-incrimination comes into play only in those instances where the witness has "reasonable cause to apprehend danger from a direct answer." Hoffman, 341 U.S. at 486 (citing Mason v. United States, 244 U.S. 362, 365 (1917)).  "The claimant must be 'confronted by substantial and 'real,' and not merely trifling or imaginary, hazards of incrimination." United States v. Apfelbaum, 445 U.S. 115, 128

3

(1980).

When applied to documentary production, the law is well established that the Fifth Amendment privilege may not apply to specific documents "even though they contain incriminating assertions of fact or belief, because the creation of those documents was not 'compelled' within the meaning of the privilege." United States v. Hubbell, 530 U.S. 27, 35-36 (2000). However, in certain instances, "'the act of production' itself may implicitly communicate 'statements of fact.'" Id. For this reason the Fifth Amendment privilege also encompasses the circumstance where the act of producing documents in response to a subpoena or production request has a compelled testimonial aspect Id. Thus, in those instances where the existence and/or location of the requested documents are unknown, or where production would "implicitly authenticate" the requested documents, the act of producing responsive documents is considered testimonial and is protected by the Fifth Amendment. In re Grand Jury Subpoena, 1 F.3d 87, 93 (2d Cir. 1993); see also Fisher v. United States, 425 U.S. 391, 410 (1976)(issue expressed as whether compliance with a document request or subpoena "tacitly conceded" the item's authenticity, existence or possession by the defendant).

### MOTION FOR RECONSIDERATION AND/OR APPEAL (D.E. #282)

Interrogatory Number 7 requests all time periods during which Epstein was present in the State of Florida, including for each the date he arrived and the date he departed. Interrogatory Number 11 requests all telephone numbers used by Epstein, including cellular phones and land lines in any of his residences, by stating the complete phone number and name of the provider. In the August 4, 2009 Order the undersigned rejected Epstein's assertion of the Fifth Amendment privilege as applied to these requests finding

the objection "so general and sweeping in nature" that they "amount[ed] to a blanket assertion of the privilege." Id. p.11.

In the instant Motion for Reconsideration, Epstein has set forth additional facts and detailed reasoning successfully demonstrating how forcing him to answer these requests would realistically and necessarily furnish a link in the chain of evidence needed to prove a crime against him and would require him to provide self-incriminating evidence relative to this case and to the other related cases that could result in a specific hazard of self-incrimination.  In light of the additional information provided, the Court is now persuaded that Epstein's whereabouts and telephone numbers are crucial issues in this case and other related cases and that if he is forced to reveal this information, these testimonial disclosures could subsequently be used to incriminate him and/or prosecute him for a criminal offense. See Hoffman v. United States, 341 U.S. 479, 486 (1951); United States v. Hubbell, 530 U.S. 27, 36 (2000).

As such, the Court hereby vacates that portion of the August 4, 2009 Order which grants Plaintiff's Motion to Compel as it relates to Interrogatory Numbers 7 and 11 and instead denies Plaintiff's Motion in this limited respect.  Accordingly, Epstein's assertion of his Fifth Amendment privilege as it relates to Interrogatory Numbers 7 and 11 is sustained and he need not provide answers to these questions.

**MORE PARTICULARIZED SHOWING (D.E. #283)**

In the August 4, 2009 Order Epstein was ordered to provide a more particularized showing with respect to Production Requests 10, 11, 19 and 21, so as to demonstrate why his Fifth Amendment privilege as applied to these requests should be sustained.  Epstein has sustained his burden in this regard by his showing that the contested requests for

5

production seeking detailed information relating to Epstein's air travel, aircraft used and flight manifests, all communications with female models, MC2 models or Jean Luc Brunel relating or referring to females coming into the United States from other countries and his personal calendars and schedules, could reveal the availability to him and/or use by him of interstate facilities and thus would constitute a link in the chain of evidence that could potentially expose him to the dangers of self-incrimination.

In this and the other civil actions, Plaintiffs allege that Epstein violated certain federal and state criminal statutes in an attempt to make claims against Epstein ranging from sexual battery to intentional infliction of emotional distress.  The lynchpin for the exercise of federal criminal jurisdiction under 18 U.S.C. §2422(b), which figures in some of the Complaints filed, is "the use of any facility or means of interstate or foreign commerce" and the analogous essential element of 18 U.S.C. §2423((b), which also figures in some of the Complaints, is "travel[s] in interstate commerce or travels into the United States or ... travels in foreign commerce."  Accordingly, requiring Epstein to provide responses to the subject production requests would in essence be compelling him to provide assertions of fact, thereby admitting that such documents existed and further admitting that the documents in his possession or control were authentic. In re Grand Jury Subpoena, 1 F.3d 87, 93 (2d Cir. 1993)(noting that in those instances where the existence and/or location of the requested documents are unknown, or where production would "implicitly authenticate" the requested documents, the act of producing responsive documents is considered testimonial and is protected by the Fifth Amendment).

In summary, the Court finds that the danger Epstein faces by being forced to respond and produce documents relative to Production Requests 10, 11, 19 and 21 is

6

substantial and real and therefore the assertion of his Fifth Amendment privilege relative to these requests is sustained and Plaintiff's Motion to Compel as it relates to these requests is denied.

In accordance with the above and foregoing, it is hereby

**ORDERED AND ADJUDGED** as follows:

(1)     Defendant's Motion for Reconsideration and/or Request for Rule 4 Review and Appeal of Portions of the Magistrate's Order (D.E. #282) is **GRANTED**.  The undesigned has reconsidered the August 4, 2009 relative to Interrogatory Numbers 7 and 11 and finds Epstein's assertion of his Fifth Amendment privilege as to these requests valid.  Accordingly, that portion of the August 4, 2009 Order which grants Plaintiff's Motion to Compel as it relates to Interrogatory Numbers 7 and 11 is hereby **VACATED**.  Instead, Plaintiff's Motion to Compel as it relates to Interrogatory Numbers 7 and 11 is denied.  Accordingly, Epstein's assertion of his Fifth Amendment privilege as it relates to these interrogatories is sustained and he need not provide answers to these questions; and

(2)     Defendant's Supplementary Brief pursuant to Magistrate's Order Requesting a More Particularized Showing Re: Fifth Amendment (D.E. #283) is **GRANTED**.  Because the Court finds the danger Epstein faces by being forced to respond and produce documents relative to Production Requests 10, 11, 19 and 21 is substantial and real, his assertion of his Fifth Amendment privilege relative to these requests is sustained and Plaintiff's Motion to Compel as it relates to these requests is denied.

**DONE AND ORDERED** this September 9, 2009, in Chambers, at West Palm Beach,

Florida.

_____
LINNEA R. JOHNSON
UNITED STATES MAGISTRATE JUDGE


CC:   The Honorable Kenneth A. Marra
       All Counsel of Record