## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.:  08-CV-80119-MARRA-JOHNSON

JANE DOE NO. 2,

                     Plaintiff,

v.

JEFFREY EPSTEIN,

                     Defendant.

_____/

Related Cases:
08-80232, 08-80380, 08-80381, 08-80994,
08-80993, 08-80811, 08-80893, 09-80469,
09-80581, 09-80656, 09-80802, 09-81092.

_____/



FILED by _____ D.C.

SEP 1 1 2009

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

### Defendant Epstein's Emergency Motion To Strike Plaintiff's Motion For Protective Order (DE 292) And Emergency Motion To Allow The Attendance Of Jeffrey Epstein At The Deposition Of Plaintiffs And Response In Opposition To Plaintiffs', Jane Doe Nos. 2-8, Motion For Protective Order As To Jeffrey Epstein's Attendance At The Deposition Of Plaintiffs, With Incorporated Memorandum of Law

Defendant, Jeffrey Epstein, by and through his undersigned counsel, and pursuant to all applicable rules, including Local Rule 7.1(e) and Local Rule 12, hereby files and serves his Emergency Motion To Strike Plaintiff's Motion For Protective Order (DE 292) And Emergency Motion To Allow The Attendance Of Jeffrey Epstein At The Deposition Of Plaintiffs And Response In Opposition To Plaintiffs', Jane Doe Nos. 2-8, Motion For Protective Order As To Jeffrey Epstein's Attendance At The Deposition Of Plaintiffs.  In support, Epstein states:

### Introduction and Background

1.     On August 19, 2009, Defendant sent a Notice for Taking the Deposition of Jane Doe No. 4 for September 16, 2009.  See **Exhibit "1"**

Page 2

2.      Additionally, notices were sent out in other cases in connection with deposing additional Plaintiffs.

3.      No objection(s) was/were received for Jane Doe No. 4, which was the only deposition set relative to the Jane Doe 2-8 Plaintiffs.

4.      On August 27, 2009, the undersigned counsel sent a letter to counsel for Jane Doe No. 4 concerning her deposition and the scheduling of same on the above date.  See **Exhibit "2".**

5.      No response was received until counsel for Jane Doe No. 4 called on September 8, 2009, approximately eight days prior to the scheduled deposition, to indicate that they now had an objection and would be filing a motion for protective order seeking to prevent Epstein from attending the deposition.  Once again, Plaintiffs are attempting to stifle this litigation through their own delay tactics during discovery. Plaintiffs wish not only to attempt to force Epstein to trial without any meaningful discovery, but now wish to ban Epstein from any depositions, thereby preventing him from assisting his attorneys in his very own defense.  What's next – will Plaintiffs seek to prevent Epstein from attending any of the trials that result from the lawsuits Jane Does 2-8 have initiated?  Plaintiffs see millions of dollars in damages, both compensatory and punitive, against Defendant.

6.      Defendant is filing this emergency motion and his immediate response to the motion for protective order to guarantee his right to be present and assist counsel in deposing not only Jane Doe No. 4, but other plaintiffs and witnesses in these cases.  To hold otherwise would violate Epstein's due process rights to defend the very allegations Plaintiffs have alleged against him. Does a Defendant not have a right to be present at depositions or other court proceedings to assist counsel with the defense of his case?  Does a Defendant, no matter what the charges or the allegations, have full and unbridled access to the court system and the proceedings it governs,

including discovery?  The short answer is unequivocally, yes.  To hold otherwise would be a direct violation of Epstein's constitutional due process rights.  Plaintiffs' attempts to play fast and loose with the law should not be tolerated.

7.     As the court is aware, plaintiffs and defendants routinely attend depositions of parties and other witnesses in both State and Federal court proceedings.  In fact, parties have a right under the law to attend such depositions.

8.     As the court will note from Exhibit 2, counsel for the Defendant specifically stated that "Please be advised that Mr. Epstein plans to be in attendance at the deposition of your client.  He does not intend to engage in any conversation with your client.  However, it is certainly his right as a party-defendant in the lawsuit to be present and to assist counsel in the defense of any case."  Despite this right, Plaintiffs continue to attempt to control how discovery is conducted in this case and how this court has historically governed discovery.

9.     Interestingly, in Jane Doe II, the state court case, attorney Sid Garcia took the deposition of the Defendant and his client, Jane Doe II, was present throughout the deposition.  This is despite her claims of "emotional trauma" set forth in her complaint.  Jane Doe No. II is also a Plaintiff in the federal court proceeding *Jane Doe II v. Jeffrey Epstein* (Case No. 09-CIV-80469).  Is this court going to start a precedent where it allows Plaintiffs to attend the depositions of Jeffrey Epstein, but not allow Epstein to attend their depositions (i.e., the very Plaintiffs that have asserted claims against him for millions of dollars)?  This court should not condone such a practice.

10.     The undersigned is well aware of the court's No-Contact Order entered on July 31, 2009 (DE 238).  A copy of the order is attached as **Exhibit "3".**  In fact, the order provides that the defendant have no direct or indirect contact with the plaintiffs, nor communications with

the plaintiffs either directly or indirectly. However, there is no prohibition against Mr. Epstein's attendance at a deposition where, as is reflected in the order, the communication will be made to the plaintiff solely through defense counsel with one or more of plaintiffs' counsel of record present in the room in a videotaped deposition. Obviously, any inappropriate contact or communication will certainly be flagged by the attorneys in attendance. As such, Plaintiffs really have the cart before the horse in this instance (i.e., nothing prevents Epstein from attending these depositions and, to the extent Plaintiffs believe that something improper occurs at any deposition, only then can that circumstance be addressed by a motion such as the instant one.)

11.    Next, Plaintiffs, Jane Does 2-8, attempt to use the Affidavit of Dr. Kliman for every motion for protective order/objection filed to date. This also includes the two most recent motions, which attempt to prevent Defendant's investigators from doing their job, such that the Defendant and his attorneys can defend the claims asserted in these cases. Plaintiffs lose sight of the fact that the court, in discussing the Non-Prosecution Agreement, inquired as to whether Epstein and his counsel could fully defend the case, which included discovery and investigation. All plaintiffs' counsel and the USAO responded in the affirmative. In fact, Plaintiffs universally agreed at the June 12, 2009 hearing on Defendant's Motion to Stay that regular discovery could proceed. See **Composite Exhibit "4"** at pages 26-30 & 33-34. For instance, the court asked Plaintiffs' attorneys the following questions:

> **The Court:** [] So again, I just want to make sure that if the cases go forward and if Mr. Epstein defends the case as someone ordinarily would defend a case being prosecuted against him or her, that that in and of itself is not going to cause him to be subject to criminal prosecution? (Ex. "A," p.26).
> ***

> **The Court:** You agree he should be able to take the ordinary steps that a defendant in a civil action can take and not be concerned about having to be prosecuted? (Ex. "A," p.27).

Page 5

***

**The Court:** Okay. But again, you're in agreement with everyone else so far that's spoken on behalf of a plaintiff that defending the case in the normal course of conducting discovery and filing motions would not be a breach? (Ex. "A," p.30).

**Mr. Horowitz – counsel for Jane Does 2-7:** Subject to your rulings, of course, yes. (Ex. "A," p.30).

***

**The Court:** But you're not taking the position that other than possibly doing something in litigation which is any other discovery, motion practice, *investigations* that someone would ordinarily do in the course of defending a civil case would constitute a violation of the agreement? (Ex. "A," p.34).

**Ms. Villafana:** No, your honor. I mean, civil litigation is civil litigation, and being able to take discovery is part of what civil litigation is all about.... But. . . , Mr. Epstein is entitled to take the deposition of a Plaintiff and to subpoena records, etc. (Ex. "A," p.34)

12.     It is clear from the transcript attached as Exhibit "4" that each of the Plaintiffs' attorneys, including Mr. Horowitz for Jane Does 2-8, expected and conceded that regular/traditional discovery would take place (i.e., discovery, motion practice, depositions, requests for records, and investigations).

13.     Importantly, Plaintiffs' counsel advised the undersigned that they coordinate their efforts in joint conference calls at least two times per month. At recent depositions of two witnesses, Alfredo Rodriguez and Juan Alessi, five different plaintiffs' attorneys questioned the witnesses for approximately six to eight hours, often repeating the same or similar questions that had previously been asked.

14.     Clearly, the Plaintiffs' counsel wish to control discovery and how the Defendant is allowed to obtain information to defend these cases. However, the court has ruled on a number of these issues as follows:

A.     Plaintiffs' counsels sought to preclude the Defendant from serving third party subpoenas and allowing only Plaintiffs' counsel to obtain

depositions and those materials and "filter them" to defense counsel. That motion was denied, and the court tailored a method such that the Defendant could obtain the records directly.

B. Plaintiffs' counsels sought to limit the psychological psychiatric examination in C.M.A. v. Jeffrey Epstein and Sarah Kellen (Case No. 08-CIV-80811), as to time, subject matter and scope. However, Magistrate Johnson entered an order denying the requested restrictions.

C. Other Plaintiffs' attorneys have said that they object to requested psychological exam of their client(s), thus motions for such exams will now need to be filed; yet all seek millions of dollars in damages for alleged psychological and emotional trauma.

D. Many Plaintiffs' object to discovery regarding current and past employment (although they are seeking loss of income, both in past and future).

E. All Plaintiffs object to prior sexual history, consensual and forced as being irrelevant, although in many of the medical records that are now being obtained, as well as the psychiatric exams done by Dr. Kliman, there is reference to rape, molestation, abusive relationships (both physical and verbal), prior abortions, illegal drugs and alcohol abuse.

15.    Clearly, Plaintiffs wish to make allegations; however, they forget that they must meet their burden by proving same. Meeting that burden and disproving those allegations is not possible if this court allows Plaintiffs to stifle and/or control the discovery process.

16.    Specifically, with regard to Jane Doe No. 4, which is the deposition set for next week, September 16, 2009, the plaintiff has in her past (see affidavit of Richard C.W. Hall, M.D., an expert psychiatrist retained by Defendant to conduct exams on various claimants.) See **Exhibit "5"**

A. Sought counseling due to a dysfunctional home situation, specifically with regard to her father. She described herself as being angry, bitter, depressed and having body image problems;

B. Had an ex-boyfriend, Preston Vinyard, who was, on information and belief, a drug dealer who she lived with;

C. Had drug and alcohol problems herself; and

Page 7

    D.    Spoke with two psychiatrists when she was sixteen or seventeen (before this lawsuit!) and did not reference Epstein, but did reference her boyfriend and family issues.

17.    There are police reports that reflect that:

    A.    In September 2004, a battery report was filed regarding Jane Doe No. 4 and Vinyard based on an argument where he grabbed her by the neck and began spitting on her and calling her a cheater.

    B.    Also in September 2004, there was a domestic violence file opened where Vinyard was physically and verbally abusive to Jane Doe No. 4, his girlfriend at the time. There is reference that the two started a serious relationship in January 2002, when she was only fourteen (14) years old.

    C.    Vinyard was arrested in December 2003, and charged with reckless driving and leaving the scene of the accident with Jane Doe No. 4, when their vehicle hit a tree and they fled.

18.    Moreover, an ex-boyfriend of Jane Doe No. 4 died in a DUI accident and it took her two years to get over his death, and another good friend of hers, "Jen," died in an automobile accident involving drinking. Within her Amended Complaint and Answers to Interrogatories, she indicates that she went to Epstein's house on several occasions. However, at no time did she call the police, at no time did she report any traumatic or severe emotional trauma, nor alleged coercion, force or improper behavior by Epstein until she got a "lawyer" and is now pursuing claims for millions of dollars. Epstein's assistance to his attorneys at these depositions regarding the above issues is not only a constitutional due process right afforded to him but essential given the fact that this court has ruled that Plaintiffs' depositions can <u>only occur one time,</u> no "second bite" absent a court order.

19.    Given the breadth of the allegations made against Epstein and the substantial damages sought, Epstein has an unequivocal and constitutional right to be present at any deposition such that he can assist his counsel with the defense of these cases. <u>See</u> *infra.* **Dr. Hall**

also prepared affidavits regarding Jane Does 2, 3, 5, 6, and 7, which are attached to DE 247.

## Memorandum Of Law

20. Plaintiffs' motion is required to be denied as they have failed to meet their burden showing the "extraordinary circumstances" necessary to establish good cause to support a protective order which would grant the extraordinarily rare relief of preventing a named party from attending in person the deposition of another named party. Also requiring denial of Plaintiffs' motion is the fact that it seeks to exclude Epstein from all the depositions of all the Plaintiffs in actions before this Court. Such relief is unprecedented and attempts to have this Court look at the Plaintiffs' collectively as opposed to analyzing each case based on facts versus broad speculation whether "extraordinary circumstances" exist on a case by case basis. In other words, the standard is such that the Court would be required to determine whether each Plaintiff has met her burden, should the Court consider adopting such extraordinary relief. On its face, the motion does not meet the necessary burden as to Jane Doe 4, or Jane Does 2, 3, 5, 6, or 7.

## Discussion of Law Requiring the Denial of the Requested Protective Order

Rule 26(c)(1)(E), Fed.R.Civ.P. (2009), governing protective orders, provides in relevant part that:

> **(1)** *In General.* A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending--or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken. The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. **The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:**
>     *           *           *           *
> **(E)** designating the persons who may be present while the discovery is conducted;

\*        \*        \*        \*

In seeking to prevent the Defendant from being present in the room where the Plaintiffs are being deposed, Plaintiffs generally rely on treatise material from Wright & Miller, 8 Federal Practice & Procedure Civ.2d, §2041, and cases cited therein. The case of Gaella v. Onassis, 487 F.2d 986, at 997 (2d Cir. 1973), cited by Plaintiffs, makes clear that the exclusion of a party from a deposition "should be ordered rarely indeed." Unlike the Gaella case, there is no showing by each of the Plaintiffs that there has been any conduct by Epstein, in rightfully defending the actions filed against him, reflecting "an irrepressible intent to continue … harassment" of any Plaintiff or a complete disregard of the judicial process, i.e. prior alleged conduct versus any action/conduct displayed in this or other cases that would justify extraordinary relief. There is absolutely no basis in the record to indicate that Epstein will act other than properly and with the proper decorum at the depositions of the Plaintiffs and abide in all respects with the No-Contact Order.

Wherefore, Epstein respectfully requests that this Court enter an order denying Plaintiffs' Motion for Protective Order, provide that Epstein is permitted to attend the depositions of the Plaintiffs that have asserted claims against him in the related matters, and for such other and further relief as this court deems just and proper.

_____
Robert D. Critton, Jr.
Michael J. Pike
Attorney for Defendant Epstein

## Certificate of Service

I HEREBY CERTIFY that a true copy of the foregoing was hand-delivered to the Clerk of the Court as required by the Local Rules of the Southern District of Florida and electronically mailed to all counsel of record identified on the following Service List on this 11th day of September, 2009.

**Certificate of Service**
**Jane Doe No. 2 v. Jeffrey Epstein**
**Case No. 08-CV-80119-MARRA/JOHNSON**

Stuart S. Mermelstein, Esq.
Adam D. Horowitz, Esq.
Mermelstein & Horowitz, P.A.
18205 Biscayne Boulevard
Suite 2218
Miami, FL 33160
305-931-2200
Fax: 305-931-0877
ssm@sexabuseattorney.com
ahorowitz@sexabuseattorney.com
*Counsel for Plaintiffs*
*In related Cases Nos. 08-80069, 08-80119, 08-80232, 08-80380, 08-80381, 08-80993, 08-80994*

Richard Horace Willits, Esq.
Richard H. Willits, P.A.
2290 10th Avenue North
Suite 404
Lake Worth, FL 33461
561-582-7600
Fax: 561-588-8819
*Counsel for Plaintiff in Related Case No. 08-80811*
reelrhw@hotmail.com

Jack Scarola, Esq.
Jack P. Hill, Esq.
Searcy Denney Scarola Barnhart & Shipley, P.A.

Brad Edwards, Esq.
Rothstein Rosenfeldt Adler
401 East Las Olas Boulevard
Suite 1650
Fort Lauderdale, FL 33301
Phone: 954-522-3456
Fax: 954-527-8663
bedwards@rra-law.com
*Counsel for Plaintiff in Related Case No. 08-80893*

Paul G. Cassell, Esq.
*Pro Hac Vice*
332 South 1400 E, Room 101
Salt Lake City, UT 84112
801-585-5202
801-585-6833 Fax
cassellp@law.utah.edu
*Co-counsel for Plaintiff Jane Doe*

Isidro M. Garcia, Esq.
Garcia Law Firm, P.A.
224 Datura Street, Suite 900
West Palm Beach, FL 33401
561-832-7732
561-832-7137 F
isidrogarcia@bellsouth.net
*Counsel for Plaintiff in Related Case No. 08-80469*

2139 Palm Beach Lakes Boulevard
West Palm Beach, FL 33409
561-686-6300
Fax: 561-383-9424
jsx@searcylaw.com
jph@searcylaw.com
*Counsel for Plaintiff, C.M.A.*


Bruce Reinhart, Esq.
Bruce E. Reinhart, P.A.
250 S. Australian Avenue
Suite 1400
West Palm Beach, FL 33401
561-202-6360
Fax: 561-828-0983
ecf@brucereinhartlaw.com
*Counsel for Defendant Sarah Kellen*

Theodore J. Leopold, Esq.
Spencer T. Kuvin, Esq.
Leopold-Kuvin, P.A.
2925 PGA Blvd., Suite 200
Palm Beach Gardens, FL 33410
561-684-6500
Fax: 561-515-2610
*Counsel for Plaintiff in Related Case No. 08-08804*
skuvin@riccilaw.com
tleopold@riccilaw.com

Robert C. Josefsberg, Esq.
Katherine W. Ezell, Esq.
Podhurst Orseck, P.A.
25 West Flagler Street, Suite 800
Miami, FL 33130
305 358-2800
Fax: 305 358-2382
rjosefsberg@podhurst.com
kezell@podhurst.com
*Counsel for Plaintiffs in Related Cases Nos. 09-80591 and 09-80656*

Jack Alan Goldberger, Esq.
Atterbury Goldberger & Weiss, P.A.
250 Australian Avenue South
Suite 1400
West Palm Beach, FL 33401-5012
561-659-8300
Fax: 561-835-8691
jagesq@bellsouth.net
*Counsel for Defendant Jeffrey Epstein*

Respectfully submitted,

By: _____
ROBERT D. CRITTON, JR., ESQ.
Florida Bar No. 224162
rcrit@bclclaw.com
MICHAEL J. PIKE, ESQ.
Florida Bar #617296
mpike@bclclaw.com
BURMAN, CRITTON, LUTTIER & COLEMAN
303 Banyan Blvd., Suite 400
West Palm Beach, FL 33401
561/842-2820 Phone
561/515-3148 Fax
(Co-*Counsel for Defendant Jeffrey Epstein)*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:  08-cv-80119-MARRA/JOHNSON

JANE DOE NO. 2,

    Plaintiff,

vs.

JEFFREY EPSTEIN,

    Defendant.

_____/

Related cases:
08-80232, 08-08380, 08-80381, 08-80994,
08-80993, 08-80811, 08-80893, 09-80469,
09-80591, 09-80656, 09-80802, 09-81092

_____/

### RE-NOTICE OF TAKING VIDEOTAPED DEPOSITION

    **PLEASE TAKE NOTICE** that the undersigned attorney will take the videotaped deposition of:

| DEPONENT | DATE & TIME | LOCATION OF DEPOSITION |
|---|---|---|
| Jane Doe #4<br>c/o Mermelstein & Horowitz PA<br>18205 Biscayne Boulevard<br>Suite 2218<br>Miami, FL  33160 | September 16, 2009<br>at 1:00 PM | Prose Court Reporting<br>250 Australian Avenue South<br>Suite #115<br>West Palm Beach, FL  33401 |

upon oral examination, before Prose Court Reporting Agency, a Notary Public, or any other officer authorized by law to take depositions in the State of Florida.  The oral, videotaped examination is being taken for the purpose of discovery, for use at trial, or for such other purposes as are permitted under the applicable Statutes of Rules of Court.

_____
Robert D. Critton, Jr.
Attorney for Defendant Epstein

*1*

## Certificate of Service

I HEREBY CERTIFY that the foregoing document is being served this day on all counsel of record identified on the following Service List in the manner specified by electronic mail (e-mail) on this 19[h] day of August, 2009

Respectfully submitted,

By: _____
ROBERT D. CRITTON, JR., ESQ.
Florida Bar No. 224162
rcrit@bclclaw.com
MICHAEL J. PIKE, ESQ.
Florida Bar #617296
mpike@bclclaw.com
BURMAN, CRITTON, LUTTIER &
COLEMAN
515 N. Flagler Drive, Suite 400
West Palm Beach, FL 33401
561/842-2820 Phone
561/515-3148 Fax
(*Counsel for Defendant Jeffrey Epstein*)

## Certificate of Service
### Jane Doe No. 2 v. Jeffrey Epstein
### Case No. 08-CV-80119-MARRA/JOHNSON

Stuart S. Mermelstein, Esq.
Adam D. Horowitz, Esq.
Mermelstein & Horowitz, P.A.
18205 Biscayne Boulevard
Suite 2218
Miami, FL 33160
305-931-2200
Fax: 305-931-0877
ssm@sexabuseattorney.com
ahorowitz@sexabuseattorney.com
*Counsel for Plaintiffs*
*In related Cases Nos. 08-80069, 08-80119,*
*08-80232, 08-80380, 08-80381, 08-80993,*
*08-80994*

Brad Edwards, Esq.
Rothstein Rosenfeldt Adler
401 East Las Olas Boulevard
Suite 1650
Fort Lauderdale, FL 33301
Phone: 954-522-3456
Fax:  954-527-8663
bedwards@rra-law.com
*Counsel for Plaintiff in Related Case No.*
*08-80893*

Paul G. Cassell, Esq.
*Pro Hac Vice*
332 South 1400 E, Room 101

Richard Horace Willits, Esq.
Richard H. Willits, P.A.
2290 10th Avenue North
Suite 404
Lake Worth, FL 33461
561-582-7600
Fax: 561-588-8819
*Counsel for Plaintiff in Related Case No.*
*08-80811*
reelrhw@hotmail.com


Jack Scarola, Esq.
Jack P. Hill, Esq.
Searcy Denney Scarola Barnhart & Shipley,
P.A.
2139 Palm Beach Lakes Boulevard
West Palm Beach, FL 33409
561-686-6300
Fax:  561-383-9424
jsx@searcylaw.com
jph@searcylaw.com
*Counsel for Plaintiff, C.M.A.*


Bruce Reinhart, Esq.
Bruce E. Reinhart, P.A.
250 S. Australian Avenue
Suite 1400
West Palm Beach, FL 33401
561-202-6360
Fax:  561-828-0983
ecf@brucereinhartlaw.com
*Counsel for Defendant Sarah Kellen*

Salt Lake City, UT 84112
801-585-5202
801-585-6833 Fax
cassellp@law.utah.edu
*Co-counsel for Plaintiff Jane Doe*

Isidro M. Garcia, Esq.
Garcia Law Firm, P.A.
224 Datura Street, Suite 900
West Palm Beach, FL 33401
561-832-7732
561-832-7137 F
isidrogarcia@bellsouth.net
*Counsel for Plaintiff in Related Case No.*
*08-80469*

Robert C. Josefsberg, Esq.
Katherine W. Ezell, Esq.
Podhurst Orseck, P.A.
25 West Flagler Street, Suite 800
Miami, FL 33130
305 358-2800
Fax: 305 358-2382
rjosefsberg@podhurst.com
kezell@podhurst.com
*Counsel for Plaintiffs in Related Cases*
*Nos. 09-80591 and 09-80656*

Jack Alan Goldberger, Esq.
Atterbury Goldberger & Weiss, P.A.
250 Australian Avenue South
Suite 1400
West Palm Beach, FL 33401-5012
561-659-8300
Fax: 561-835-8691
jagesq@bellsouth.net
*Counsel for Defendant Jeffrey Epstein*

## BURMAN, CRITTON LUTTIER & COLEMAN, LLP
### YOUR TRUSTED ADVOCATES

A LIMITED LIABILITY PARTNERSHIP

J. MICHAEL BURMAN, P.A.[1,2]
GREGORY W. COLEMAN, P.A.
ROBERT D. CRITTON, JR., P.A. [1]
BERNARD LEBEDEKER
MARK T. LUTTIER, P.A.
JEFFREY C. PEPIN
MICHAEL J. PIKE
HEATHER MCNAMARA RUDA
DAVID YAREMA

[1]FLORIDA BOARD CERTIFIED CIVIL TRIAL LAWYER
[2]ADMITTED TO PRACTICE IN FLORIDA AND COLORADO

ADELQUI J. BENAVENTE
PARALEGAL/INVESTIGATOR
JESSICA CADWELL
BOBBIE M. MCKENNA
ASHLIE STOKEN-BARING
BETTY STOKES
PARALEGALS
RITA H. BUDNYK
OF COUNSEL
ED RICCI
SPECIAL CONSUMER
JUSTICE COUNSEL

August 27, 2009

**Sent by E.Mail and U.S. Mail**
Stuart S. Mermelstein, Esq.
Herman & Mermelstein, P.A.
18205 Biscayne Blvd.
Suite 2218
Miami, FL 33160

Re:   **Jane Doe No. 4 v. Epstein**

Dear Stuart:

Please be advised that Mr. Epstein plans to be in attendance at the deposition of your client. He does not intend to engage in any conversation with your client. However, it is certainly his right as a party-defendant in the lawsuit to be present and to assist counsel in the defense of any case.

Cordially yours,

Robert D. Critton, Jr.

RDC/clz

cc:   Jack A. Goldberger, Esq.

**2**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

JANE DOE NO. 2,                          CASE NO.: 08-CV-80119-MARRA/JOHNSON

     Plaintiff,

vs.

JEFFREY EPSTEIN,

     Defendant.
_____/

JANE DOE NO. 3,                          CASE NO.: 08-CV-80232-MARRA/JOHNSON

     Plaintiff,

vs.

JEFFREY EPSTEIN,

     Defendant.
_____/

JANE DOE NO. 4,                          CASE NO.: 08-CV-80380-MARRA/JOHNSON

     Plaintiff,

vs.  JEFFREY EPSTEIN,

     Defendant.
_____/

JANE DOE NO. 5,                          CASE NO.: 08-CV-80381-MARRA/JOHNSON

     Plaintiff,

vs.

JEFFREY EPSTEIN,

1

3

Defendant.

_____/

JANE DOE NO. 6,                             CASE NO.: 08-80994-CIV-MARRA/JOHNSON

      Plaintiff,

vs.

JEFFREY EPSTEIN,

      Defendant.

_____/

JANE DOE NO. 7,                             CASE NO.: 08-80993-CIV-MARRA/JOHNSON

      Plaintiff,

vs.

JEFFREY EPSTEIN,

      Defendant.

_____/

C.M.A.,                                     CASE NO.: 08-80811-CIV-MARRA/JOHNSON

      Plaintiff,

vs.

JEFFREY EPSTEIN,

      Defendant.

_____/

JANE DOE,                                   CASE NO.: 08- 80893-CIV-MARRA/JOHNSON

      Plaintiff,

vs.

JEFFREY EPSTEIN et al,

2

Defendants.

_____/

DOE II,                                     CASE NO.: 09- 80469-CIV-MARRA/JOHNSON

      Plaintiff,

vs.

JEFFREY EPSTEIN et al,

      Defendants.

_____/

JANE DOE NO. 101,                           CASE NO.: 09- 80591-CIV-MARRA/JOHNSON

      Plaintiff,

vs.

JEFFREY EPSTEIN,

      Defendant.

_____/

JANE DOE NO. 102                            CASE NO.: 09- 80656-CIV-MARRA/JOHNSON

      Plaintiff,

vs.

JEFFREY EPSTEIN,

      Defendant.

_____/

## ORDER

THIS CAUSE is before the Court upon Plaintiffs Jane Doe. No 101 and 102's Motion for No-Contact Order (DE 113) and Plaintiffs Jane Does' 2-7 Notice of Joinder in Plaintiffs' Motion (DE 145).  The Court has reviewed the motions, responses, and replies (DE's 113, 127, 136, 145,

3

233), and is otherwise fully advised in the premises.  Plaintiffs seek a Court order prohibiting Defendant or his agents from communicating with Plaintiffs directly or indirectly.  Defendant. Defendant opposes the request as "needless, unwarranted and excessive." (DE 127 at 5). Nonetheless, Defendant states in his response that "neither Mr. Epstein nor his attorneys, nor their agents intend to have any direct or indirect contact with Plaintiffs counsels' clients." (DE 127 at 4).

The Court notes that Defendant is already under court order not to have direct or indirect contact with any victims.  See Transcript of Plea Conference at 20.  During the course of Defendant's state plea conference of June 30, 2009, Palm Beach Circuit Court Judge Deborah Dale Pucillio explicitly instructed Defendant as follows:

> Court: Okay. D is, you shall not have any contact with the victim, are there more than one victim?
>
> Ms. Belohlavek: There's several.
>
> Court: Several, all of the victims.  So this should be plural.  I'm making that plural.  You are not to have any contact direct or indirect, and in this day and age I find it necessary to go over exactly what we mean by indirect.  By indirect, we mean no text messages, no e-mail, no Face Book, no My Space, no telephone calls, no voice mails, no messages through carrier pigeon, no messages through third parties, no hey would you tell so and so for me, no having a friend, acquaintance or stranger approach any of these victims with a message of any sort from you, is that clear?
>
> Defendant: Yes, ma'am.

Id. at 20-21.

In light of Defendant's response to Plaintiffs' motion for no contact order, suggesting that the state court's order only applies to some victims and that parties are always allowed to contact each other directly, the Court finds it necessary to state clearly that Defendant is under this

4

court's order not to have direct or indirect contact with any plaintiffs, regardless of the intended scope of the state court's order.  Accordingly, it is hereby

**ORDERED AND ADJUDGED** as follows:   Plaintiffs Jane Doe. No 101 and 102's Motion for No-Contact Order (DE 113) is **GRANTED.**  Defendant is hereby prohibited from communicating with all plaintiffs directly or indirectly[1], either personally or through agents, except that Defendant may communicate with plaintiffs only through plaintiffs' attorneys of record, for the duration of this Order.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 31st day of July, 2009

KENNETH A. MARRA
United States District Judge

Copies furnished to:
all counsel of record

---

[1]See infra, excerpt of Transcript of Plea Conference at 20-21, for examples of indirect contact.

1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
CASE NO. 08-80119-CIV-MARRA

————————————————————|          WEST PALM BEACH, FLORIDA

JANE DOE, et al.,                |

          Plaintiffs,            |          JUNE 12, 2009

     vs.                         |

JEFFREY EPSTEIN,                 |

          Defendant.             |
————————————————————x

TRANSCRIPT OF MOTION HEARING
BEFORE THE HONORABLE KENNETH A. MARRA,
UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE PLAINTIFFS:          ADAM D. HOROWITZ, ESQ.
                             Mermelstein & Horowitz
                             18205 Biscayne Boulevard
                             Miami, FL 33160        305.931.2200
                             For Jane Doe

                             BRADLEY J. EDWARDS, ESQ.
                             Rothstein Rosenfeldt Adler
                             401 East Las Olas Boulevard
                             Fort Lauderdale, FL 33301
                             Jane Doe 3, 4, 5, 6, 7
                                              954.522.3456
                             ISIDRO M. GARCIA, ESQ.
                             Garcia Elkins Boehringer
                             224 Datura Avenue
                             West Palm Beach, FL 33401
                             Jane DOE II        561.832.8033
                             RICHARD H. WILLITS, ESQ.
                             2290 10th Avenue North
                             Lake Worth, FL 33461
                             For C.M.A.        561.582.7600

THE COURT:  That's not my concern.  So, again, I just want to make sure that if the cases go forward and if Mr. Epstein defends the case as someone ordinarily would defend a case that's being prosecuted against him or her, that that in and of itself is not going to cause him to be subject to criminal prosecution.

MR. JOSEFSBERG:  I agree, Your Honor.

THE COURT:  Any other plaintiff's counsel want to chime in?

MR. WILLITS:  Richard Willits on behalf of C.M.A..  I would join, to weigh in on what Mr. Josefsberg said.

MR. JOSEFSBERG:  Your Honor, I could not hear.

THE COURT:  We'll get him to a microphone. Mr. Willits is speaking.

MR. WILLITS:  On behalf of my client, C.M.A., we join in what Mr. Josefsberg said, and we also want to point out something to the Court.

First, we want to make a representation to the Court, we have no intention of complaining to the U.S. Attorney's Office, never had that intention, don't have that intention in the future, but, of course, subject to what occurs in the future.

I want to point out to the Court that Mr. Epstein went into this situation with his eyes wide open, represented by counsel, knowing that civil suits had to be coming.  If he

didn't know it, his lawyers knew it.

He appears to be having second thoughts now about he could have negotiated this way or he could have negotiated that way with the U.S. Attorney's Office. And they want to impose their second thoughts on the innocent plaintiffs. We don't think that's fair. We think it's in the nature of invited error, if there was any error whatsoever.

Thank you.

THE COURT: You agree he should be able to take the ordinary steps that a defendant in a civil action can take and not be concerned about having to be prosecuted?

MR. WILLITS: Of course. And we say the same thing Mr. Josefsberg said. It's all subject to your rulings and the direction of this Court as to what is proper and what is not proper. And we're prepared to abide by the rulings of this Court, and we have no intention of running to the State's Attorney.

THE COURT: The U.S. Attorney?

MR. WILLITS: I'm sorry. The U.S. Attorney.

THE COURT: Mr. Garcia.

MR. GARCIA: Thank you, Your Honor.

If I may briefly, I think perhaps defense counsel forgot about this, but on pages 17 and 19 of my memorandum of law in opposition to the motion to dismiss, I did make reference to the non-prosecution agreement, and I did say that

it, it doesn't relate to our clients.

THE COURT:  Okay.  But, again, you're in agreement with everyone else so far that's spoken on behalf of a plaintiff that defending the case in the normal course of conducting discovery and filing motions would not be a breach?

MR. HOROWITZ:  Subject to your rulings, of course, yes.

THE COURT:  Thank you.

Anyone else have anything to say from the plaintiffs?

Ms. Villafana, if you would be so kind as to maybe help us out.  I appreciate the fact that you're here, and I know you're not a party to these cases and under no obligation to respond to my inquiries.  But as I indicated, it would be helpful for me to understand the Government's position.

MS. VILLAFANA:  Thank you, Your Honor.  And we, of course, are always happy to try to help the Court as much as possible.  But we are not a party to any of these lawsuits, and in some ways we are at a disadvantage because we don't have access.  My access is limited to what's on Pacer.  So I don't really know what positions Mr. Epstein may have taken either in correspondence or in discovery responses that aren't filed in the case file.

But your first order was really just what do you think about a stay, and then the second order related to this hearing and asked a much more specific question, which is whether we

we had filed that response. And what we said in the response to the motion to stay is that the reason why he wants to stay the litigation is so that the non-prosecution agreement terminates based on a period of time, as he puts it. And then afterwards he would be able to come in here and make all of these arguments that clearly violate the non-prosecution agreement but we would be without remedy.

THE COURT: But you're not taking the position that other than possibly doing something in litigation which is a violation of an express provision of the non-prosecution agreement, any other discovery, motion practice, investigations that someone would ordinarily do in the course of defending a civil case would constitute a violation of the agreement?

MS. VILLAFANA: No, Your Honor. I mean, civil litigation is civil litigation, and being able to take discovery is part of what civil litigation is about. And while there may be, for example, if someone were to try to subpoena the Government, we would obviously resist under statutory reasons, all that sort of stuff. But, no, Mr. Epstein is entitled to take the deposition of a plaintiff and to subpoena records, etc.

THE COURT: And even if he seeks discovery from a Government agency, you have the right to resist it under the rules of procedure but that would not constitute a violation, again unless there's a provision in the prosecution agreement

Jane Doe #4



v.

Jeffrey Epstein

## AFFIDAVIT OF RICHARD C.W. HALL, M.D.

STATE OF FLORIDA

COUNTY OF SEMINOLE

On this day personally appeared before me, the undersigned authority, Richard C.W. Hall, M.D., who, being by me first duly sworn under oath deposes and says:

1.      My name is Richard C.W. Hall, M.D. I am over the age of majority, and make this affidavit and declaration upon the basis of personal knowledge of the factual matters contained herein.

2.      I have maintained a private practice in psychiatry and forensic psychiatry since 1996.

3.      I, also, currently serve as a Courtesy Clinical Professor of Psychiatry at the University of Florida, College of Medicine, Gainesville, Florida; Affiliate Professor, Dept of Psychiatry and Behavioral Medicine, University of South Florida; and Professor of Psychiatry, Department of Medical Education, University of Central Florida College Medicine.

4.      I received my undergraduate degree from the Johns Hopkins University and

1



medical degree from the University of Florida College of Medicine, Gainesville, Florida.

5. I served as a Lieutenant Commander in the United States Navy, where I researched and evaluated biological and neurochemical factors associated with the onset of psychiatric disorders and served as a representative to the Joint Services Task Force planning *Operation Homecoming*, the return of POW's from Vietnam.

6. I have previously served as an assistant clinical professor at the University of South Florida College of Medicine, directed one of the ten model mental health centers in the United States, and served as a medical consultant to the Kennedy Space Center.

7. I am a former member of the academic faculty at the University of Texas, in Houston, Texas where I served as Assistant Professor and then Associate Professor of Psychiatry and Internal Medicine, Director of Clinical Research, Director of Residency Training, Chief of the Consultation/Liaison Service, and Chief Psychiatrist at the M.D. Anderson Cancer Hospital in Houston.

8. I, also, have served as a Professor of Internal Medicine and Psychiatry at the Medical College of Wisconsin where I was appointed Chief of Psychiatry at the Milwaukee County and Froedtert Hospitals.

9. In addition, I have served as a Professor of Psychiatry and Internal Medicine and Associate Dean at the University of Tennessee College of Medicine, Memphis.

10. The amended complaint filed by Jane Doe #4 against Jeffrey Epstein makes

2

sensitive allegations of sexual assault and abuse upon a minor and seek damages in excess of $50 million. Jane Doe #4 alleges confusion, shame, humiliation, embarrassment, and severe psychological and emotional injuries. It is further alleged that she suffered, and will continue to suffer, severe and permanent traumatic injuries, including mental, psychological, and emotional damages.

11. She alleges the intentional infliction of emotional distress and that Mr. Epstein's conduct caused severe emotional distress, severe mental anguish and pain.

12. She further alleges that she has suffered personal injury including mental, psychological and emotional damage.

13. Plaintiff's counsel has retained an expert witness, Dr. Kliman of the Psychological Trauma Center, a division of Preventive Psychiatry Associates Medical Group, Inc., of San Francisco, California, of which Gilbert W. Kliman, MD, is the medical director. Dr. Kliman's initial records indicate the following concerning Jane Doe #4.

14. Plaintiff reports a history of alcohol use and an ex-boyfriend who drank alcohol and used pills that were "a form of oxycodine [sic] a form of heroine [sic]." (Page 18, tape 1)

15. Plaintiff reports obtaining a restraining order against her ex-boyfriend, stating that he would spit in her face, push her, and was abusive. (Page 20, tape 1)

16. Plaintiff reports talking with two psychiatrists at age 16 or 17 due to family

issues and boyfriend issues. (Pages 2 and 3, tape 3). In the tapes, she makes no mention of telling the psychiatrists of her alleged encounters with Epstein. Moreover, while Plaintiff denies recruiting other girls, on page 24 of the Palm Beach Police Report, Plaintiff said she left a note for Epstein that indicated "for a good time call [Plaintiff] and [friend]" and left the girls' phone numbers.

17.     Plaintiff noted that while in high school a friend, Chris, died in a motor vehicle accident, that she was in shock from his death, and that she got over it after about 1 ½ to 2 years, but that it still bothers her. (Page 4, GK Contemp notes)

18.     Plaintiff noted that a close friend, Jen, died in a motor vehicle accident and that she was in shock for two months. (Page 4, GK Contemp notes)

19.     Plaintiff reported, "I probably went there over 50 times." (Page 3, tape 4)

20.     Plaintiff was arrested at age 17 for DUI on 3/09/05. (Police Offense Report)

21.     On 10/31/04, fight occurred between plaintiff and Preston ███████ in back of cab. Plaintiff (age 17) had been drinking. Police were called for theft of cab fare. Upon arriving at residence, police found plaintiff in home with no shirt on. Plaintiff refused to cooperate with police and threatened to kill herself. ███████ was arrested for violation of protective order. (Police Offense Report)

22.     On 2/28/02, plaintiff was charged with shoplifting bras from Burdines and was issued a juvenile referral form. (Police Offense Report)

4

23.     On 9/21/04, a protective order was filed against Preston ▨ after an incident on 9/20/04 in which he accused her of cheating on him. He then began choking her, threw her against a wall, and yelled at plaintiff. He dumped beer on her, threw cigarettes in her face, and slammed her into the ground. On a previous incident in August 2004, plaintiff reported they agued and Mr. ▨ grabbed her by her arms and threw her to the ground outside her house.  Plaintiff noted she was in fear because he has a violent history and has verbally threatened her friends, family and herself. (Petition for Injunction for Protection)

24.     All of the above show that this plaintiff came from an unstable and disturbed home, had been subject to previous physical and sexual abuse, was fearful, isolated, and had had suicidal ideation prior to meeting Mr. Epstein. For further elaboration of her history and background, access to all available records is crucial if one is to fully understand the impact of any of these events on her subsequent behavior and proportion the impact of specific events, if any, or her current and future level of function.

25.     In Dr. Kliman's initial replenishment retainer agreement and fee schedule (date 7/18/08), in a heading entitled "Regarding Full Disclosure," Dr. Kliman notes that prior to deposition, counsel will make every effort necessary to provide experts with information requested by the experts including: 1) a list of all depositions, statements, declarations, and motions in the case, 2) a copy of any requested items, and 3) most

5

importantly, a list of all medical, clinical, school, and work records known to the attorney in the case.

26.    Dr. Kliman notes on page 8 of his contract opinion formation that he will not form opinions, give reports, or testify in certain circumstances. These include circumstances where he has reason to believe a retaining attorney has "available important and relevant documents which are being deliberately withheld from us." "We define such as documents in possession of retaining attorney, which we have requested or that we have stated would ordinarily be part of medical opinion formation on the topics concerning, which our input is requested." We request the same.

27.    It is critical for an IME examiner to be able to make a cogent assessment of any plaintiff and to understand their medical, social, academic, psychological and psychiatric condition/state prior to any act of alleged victimization. There are a number of variables that combine to determine the effects of such alleged victimization; including the type and character of the alleged assault; and key victim variables such as demographics; psychological reactions at the time of the trauma; previous psychiatric or psychological history, history of previous victimization; current or previous psychological difficulties; general personality dynamics and coping style; sociocultural factors such as drug use/abuse; poverty; social inequity and/or inadequate social support; any previous history of abuse within or outside the family; whether individuals were abused by strangers,

acquaintances or family members; and whether there was any history of indiscriminate behavior that may have placed them at increased risk. It is important to know if there had been previous sexual conduct, contact with police or welfare agencies, alcohol or drug use/abuse, voluntary sexual activity, contraceptive use, genital infections, or apparent indifference to previous abuse.

28.   It is also essential to understand the plaintiff's level of emotional support, whether any significant psychiatric illnesses were present, whether they were taking any medications (prescribed or non-prescribed), whether there had been previous suicide attempts, thoughts, plans, etc.

29.   Knowledge of plaintiff's relationships to her family and familial factors, including social disadvantage, family instability, impaired parent/child relationship, and parental adjustment difficulties is also critical.

30.   It is, therefore, crucial that the independent medical examiner has available to him a full and complete record that includes medical, previous legal, social, criminal, academic, psychological and psychiatric records/data; psychological tests; laboratory tests; and clinical, hospital, physician records.

31.   These, in essence, are the same or similar records that plaintiff's expert witness (Dr. Kliman) feels are essential for him to do an appropriate evaluation. To obtain the necessary information, it will be necessary to identify the plaintiff by name. Such

identification will not humiliate the plaintiff since all we are requesting is pertinent

information as noted above relative to their past medical and psychiatric histories and

conduct. We would concur and request of the court that the same and/or similar

information be made available to us to conduct our examination.


Respectfully submitted,

Richard C. W. Hall, MD

Courtesy Clinical Professor of Psychiatry, University of Florida, College of Medicine

Affiliate Professor, Department of Psychiatry and Behavioral Medicine, University of South Florida

Professor of Psychiatry, Department of Medical Education, University of Central Florida College of

Medicine


STATE OF FLORIDA
COUNTY OF SEMINOLE

BEFORE ME, the undersigned authority, personally appeared RICHARD C.W. HALL, M.D., who is ( ✓ ) personally known to me or ( ) who has produced _____ as identification, and who did take an oath, deposes and says that the attached Affidavit is true and correct to the best of his knowledge and belief.

SWORN TO AND SUBSCRIBED before me on this _4th_ day of _August_, 2009.

Notary Public

Printed Name: MARCIA J. CHAPMAN

My Commission Expires:

MARCIA J. CHAPMAN
Comm# DD0561004
Expires 6/6/2010
Florida Notary Assn., Inc

8