UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:  08-CIV-80119-MARRA/JOHNSON

JANE DOE NO. 2,

      Plaintiff,

vs.

JEFFREY EPSTEIN,

      Defendant.

_____/

Related cases:
08-80232, 08-08380, 08-80381, 08-80994,
08-80993, 08-80811, 08-80893, 09-80469,
09-80591, 09-80656, 09-80802, 09-81092

_____/

**EPSTEIN'S RESPONSE IN OPPOSITION TO JANE DOE NO. 4'S
MOTION FOR PROTECTIVE ORDER AS TO THE SCOPE OF
INQUIRY AT THE DEPOSITIONS OF JANE DOE NO. 4'S PARENTS**

Defendant, JEFFREY EPSTEIN ("Epstein"), submits this Response in Opposition to Plaintiff's, Jane Doe No. 4, Motion for Protective Order As to the Scope of Inquiry at the Depositions of Jane Doe No. 4's Parents (DE #420) ("Motion"), and states:

1.     In her Motion (DE #420), Jane Doe No. 4 asks the Court to enter a protective order prohibiting counsel for Epstein from asking her parents leading questions regarding Jane Doe No. 4's three abortions and limiting counsel "to asking only open-ended questions on the subject of abortion, such as whether they know if Jane Doe No. 4 has ever had an abortion." See DE #420 *Ad Damnum* Clause. In essence, Jane Doe No. 4 wants this Court to tell Epstein's counsel "how" it must ask question to Jane Doe No. 4's parents who we can only speculate will be somewhat favorable to her. Does Jane Doe No. 4 want all questions to be scripted?

2.      First, Jane Doe No. 4's Motion is premature as Epstein has not yet set the depositions of Jane Doe No. 4's parents.

3.      Next, this is yet another attempt by Plaintiff to control discovery and insulate herself and her witnesses by asking the Court to disallow discovery of information directly relevant and material to her damage claims on the basis that it may be "embarrassing" or "upsetting" to her parents. See DE #420 ¶8. However, the Court has ruled on a number of these issues as follows:

      a.   Plaintiffs' attorneys sought to preclude the Epstein from serving third party subpoenas and allowing only Plaintiffs' counsel to obtain depositions and those materials and "filter them" to defense counsel. That motion was denied, and the court tailored a method such that the Epstein could obtain the records directly. See DE #253.

      b.   Plaintiff's counsel sought to limit the psychological psychiatric examination in C.M.A. v. Jeffrey Epstein and Sarah Kellen (Case No. 08-CIV-80811), as to time, subject matter and scope. However, Magistrate Johnson entered an order denying the requested restrictions. See DE # 289.

      c.   Many Plaintiffs' objected to discovery regarding current and past employment (although they are seeking loss of income, both in past and future). The Court granted Epstein's Motions to Compel related to Plaintiffs' tax returns and documents related to Plaintiffs' earnings. See DE #377.

      d.   All Plaintiffs objected to discovery of their prior sexual history, consensual and forced as being irrelevant. The Court granted Epstein's Motions to Compel information related to Plaintiffs' past sexual history. See DE # 377.

4.      Jane Doe No. 4 is seeking to recover millions of dollars in damages for "confusion, shame, humiliation and embarrassment," "severe psychological and emotional injuries," "severe permanent traumatic injuries, including mental, psychological and emotional damages" and "severe mental anguish and pain." See Second Amend. Compl. (DE #62) ¶¶15, 22, 28. Yet she wants to impermissibly narrow the scope of permissible discovery to serve her

Jane Doe No. 4 v. Epstein
Case No. 08-CIV-80119-MARRA/JOHNSON
*Epstein's Response in Opposition to Jane Doe No. 4's Motion Order as to the Scope of Inquiry at the Depositions of Jane Doe No.4's Parents*
Page 3 of 8

own personal interests, namely, to continue to hide the fact she had three abortions from her parents.

5.      As with many of the Plaintiffs, Jane Doe No. 4 has had a complicated and eventful past history including, but not limited to: (1) drug use which includes cocaine, marijuana, ecstasy and xanax (see 10/27/09 Deposition of Jane Doe No. 4 ["Jane Doe No. 4 Depo"] at 215-17); (2) repeated instances of domestic violence and physical and verbal abuse by her former boyfriend, Preston Vinyard, in which he bit her finger, spit on her, poured beer on her and called her degrading names such as "whore," "slut," and "cunt" (id. at 29-30; 296-298); (3) three pregnancies with Vinyard that ended in three abortions, which she failed to disclose to various physicians, including her own psychiatric expert, Dr. Kliman, and which she admitted caused her more emotional trauma than her encounters with Mr. Epstein (id. at 299-306); and (4) arrests, including a recent arrest in Jupiter, Florida in October 2009 for domestic violence where she attacked, hit and bit her current boyfriend (id. at 25-26; 339; 346-48).  However, Jane Doe No. 4 never sought treatment from a mental health professional until she was sent to Dr. Kliman by her attorneys after this suit was filed (id. at 242).

6.      Moreover, while Jane Doe No. 4 was seeing Mr. Epstein (both before **and after** she turned 18), which she testified was between 30 and 50 times (id. at 77-78), including her freshman year of college at Lynn University (id. at 74), she made a sex tape depicting vaginal and oral sex with her boyfriend which she voluntarily showed to Mr. Epstein (id. at 226-230). She also admitted to lying to the police (id. at 12-13) and lying to physicians, including her own expert, Dr. Kliman (id. at 306).

7.     On the other hand, Jane Doe No. 4 testified that all contact and conduct with Epstein was voluntary and consensual; she did not have intercourse, oral or anal sex with Epstein nor did she touch his genitalia; and at no time did Epstein ever restrain her or use physical force. See Jane Doe No. 4 Depo at 78-79; 168-70; 361.

8.     Jane Doe No. 4's parents are important witnesses in that they likely have information about her psychological and emotional condition pre-Epstein, during the time she was seeing Epstein, and post-Epstein.

9.     Jane Doe No. 4 argues "since [her parents] are unaware of the abortions, neither will be able to provide any information about when the procedures occurred, her mental state at the time of each procedure, whether any complications arose, or any other information that could reasonably be calculated to lead to admissible evidence.... [Epstein's] counsel intends to inquire into these matters solely for the purpose of harassing, embarrassing, and oppressing Jane Doe No. 4." See DE #420 ¶7.

10.    However, questioning Jane Doe No. 4's parents about her abortions is, in fact, directly relevant to her claim of damage in this case.  In her October 27, 2009 deposition, Jane Doe testified that having three abortions was more traumatic that her encounters with Mr. Epstein. See Jane Doe No. 4 Depo at 304-05.

11.    Jane Doe No. 4's parents are likely aware of the allegations in this case (or they will be when they are deposed).  That Jane Doe No. 4 is comfortable with her parents knowing about allegations of sexual abuse and physical and verbal abuse by Preston Vinyard but not comfortable with them knowing about three abortions is telling as to the psychological impact the abortions had on Jane Doe No. 4.

Jane Doe No. 4 v. Epstein
Case No. 08-CIV-80119-MARRA/JOHNSON
*Epstein's Response in Opposition to Jane Doe No. 4's Motion Order as to the Scope of Inquiry at the Depositions of Jane Doe*
  *No.4's Parents*
Page 5 of 8

12.     It is axiomatic that the discovery rules were intended to promote the search for truth, which is the heart of our judicial system.  It follows that full knowledge of relevant facts will aid in the search for truth.  The converse is also true – withholding relevant facts will obstruct the search for truth.

13.     Permitting Jane Doe No. 4's parents to be deposed regarding her alleged emotional damages without them knowing the full extent of traumatic events that may have caused or contributed to her damages could certainly skew their testimony.  For example, if Jane Doe No. 4's parents are oblivious to her having three abortions, they may incorrectly attribute her alleged emotional distress to Mr. Epstein when, in fact, it may very well have been caused by the multiple abortions.

14.     Indeed, the Court denied Plaintiff's, C.M.A., Motion for Protective Order (Order at DE #289) requesting the Court limit her independent psychological/psychiatric medical examination to six hours and to prohibit repeated questions regarding Plaintiff's medical history, psychiatric history, sexual history, social history, sexual abuse history and substance abuse history.  In its Order, the Court noted that Plaintiff is seeking millions of dollars in personal injury damages and that no authority was uncovered to support the "novel positions that a Plaintiff who puts her mental, emotional and psychiatric state at issue can place a limitation on the number of times defense counsel … can inquire into areas relevant to these issues where the subject matter involved is 'highly personal,' 'embarrassing,' 'sensitive,' or otherwise 'humiliating.'"  See DE #289 at 3.

15.     The same reasoning applies to the instant Motion.  Jane Doe No. 4 cites no authority for the proposition that Epstein should be precluded from asking her parents leading

questions regarding her three abortions, events that admittedly had a substantial and traumatic impact on her.

16.     To the contrary, it is clearly permissible for Epstein's counsel to ask leading questions of Jane Doe No. 4's parents. Rule 30(c)(1), Federal Rules of Civil Procedure, provides that "[t]he examination and cross-examination of a deponent proceed as they would at trial under the Federal Rules of Evidence, except Rules 103 and 615." Rule 611(c), Federal Rules of Evidence, provides in pertinent part, "[w]hen a party calls … a witness identified with an adverse party, interrogation may be by leading questions."

17.     Jane Doe No. 4's parents certainly constitute "witness[es] identified with an adverse party" and therefore Epstein may ask leading questions in their depositions.

18.     For all of the foregoing reasons, the Court should deny Jane Doe No. 4's Motion.

WHEREFORE, Defendant, JEFFREY EPSTEIN, respectfully requests the Court deny Jane Doe's Motion (DE #420) and grant any additional relief the Court deems just and proper.

By:  /s./ Robert D. Critton, Jr.
ROBERT D. CRITTON, JR., ESQ.
Florida Bar No.  224162
rcrit@bclclaw.com

Jane Doe No. 4 v. Epstein
Case No. 08-CIV-80119-MARRA/JOHNSON
*Epstein's Response in Opposition to Jane Doe No. 4's Motion Order as to the Scope of Inquiry at the Depositions of Jane Doe No.4's Parents*
Page 7 of 8

## Certificate of Service

I HEREBY CERTIFY that a true copy of the foregoing was electronically filed with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record identified on the following  Service List in the manner specified by CM/ECF on this 20th day of November, 2009

Respectfully submitted,

By:   /s/ Robert D. Critton, Jr.
ROBERT D. CRITTON, JR., ESQ.
Florida Bar No.  224162
rcrit@bclclaw.com
MICHAEL J. PIKE, ESQ.
Florida Bar #617296
mpike@bclclaw.com
BURMAN, CRITTON, LUTTIER & COLEMAN
303 Banyan Boulevard, Suite 400
West Palm Beach, FL 33401
561/842-2820 Phone
561/253-0164 Fax
*(Counsel for Defendant Jeffrey Epstein)*

## Certificate of Service
## Jane Doe No. 2 v. Jeffrey Epstein
## Case No. 08-CV-80119-MARRA/JOHNSON

Stuart S. Mermelstein, Esq.
Adam D. Horowitz, Esq.
Mermelstein & Horowitz, P.A.
18205 Biscayne Boulevard
Suite 2218
Miami, FL 33160
305-931-2200
Fax: 305-931-0877
ssm@sexabuseattorney.com
ahorowitz@sexabuseattorney.com
*Counsel for Plaintiffs*
*In related Cases Nos. 08-80069, 08-80119, 08-80232,  08-80380,  08-80381,  08-80993,  08-80994*
Richard Horace Willits, Esq.
Richard H. Willits, P.A.
2290 10th Avenue North

Brad Edwards, Esq.
Rothstein Rosenfeldt Adler
401 East Las Olas Boulevard
Suite 1650
Fort Lauderdale, FL 33301
Phone: 954-522-3456
Fax:  954-527-8663
bedwards@rra-law.com
*Counsel for Plaintiff in Related Case No. 08-80893*

Paul G. Cassell, Esq.
*Pro Hac Vice*
332 South 1400 E, Room 101
Salt Lake City, UT 84112
801-585-5202
801-585-6833 Fax

Jane Doe No. 4 v. Epstein
Case No. 08-CIV-80119-MARRA/JOHNSON
*Epstein's Response in Opposition to Jane Doe No. 4's Motion Order as to the Scope of Inquiry at the Depositions of Jane Doe*
*   No.4's Parents*
Page 8 of 8

Suite 404
Lake Worth, FL 33461
561-582-7600
Fax: 561-588-8819
*Counsel for Plaintiff in Related Case No. 08-*
*80811*
reelrhw@hotmail.com

Jack Scarola, Esq.
Jack P. Hill, Esq.
Searcy Denney Scarola Barnhart & Shipley, P.A.
2139 Palm Beach Lakes Boulevard
West Palm Beach, FL 33409
561-686-6300
Fax:  561-383-9424
jsx@searcylaw.com
jph@searcylaw.com
*Counsel for Plaintiff, C.M.A.*

Bruce Reinhart, Esq.
Bruce E. Reinhart, P.A.
250 S. Australian Avenue
Suite 1400
West Palm Beach, FL 33401
561-202-6360
Fax:  561-828-0983
ecf@brucereinhartlaw.com
*Counsel for Defendant Sarah Kellen*

Theodore J. Leopold, Esq.
Spencer T. Kuvin, Esq.
Leopold, Kuvin, P.A.
2925 PGA Blvd., Suite 200
Palm Beach Gardens, FL  33410
561-684-6500
Fax: 561-515-2610
skuvin@leopoldkuvin.com
*Counsel for Plaintiff in Related Case No. 08-*
*08804*

cassellp@law.utah.edu
*Co-counsel for Plaintiff Jane Doe*

Isidro M. Garcia, Esq.
Garcia Law Firm, P.A.
224 Datura Street, Suite 900
West Palm Beach, FL 33401
561-832-7732
561-832-7137 F
isidrogarcia@bellsouth.net
*Counsel for Plaintiff in Related Case No. 08-*
*80469*

Robert C. Josefsberg, Esq.
Katherine W. Ezell, Esq.
Podhurst Orseck, P.A.
25 West Flagler Street, Suite 800
Miami, FL 33130
305 358-2800
Fax: 305 358-2382
rjosefsberg@podhurst.com
kezell@podhurst.com
*Counsel for Plaintiffs in Related Cases Nos.*
*09-80591 and 09-80656*

Jack Alan Goldberger, Esq.
Atterbury Goldberger & Weiss, P.A.
250 Australian Avenue South
Suite 1400
West Palm Beach, FL 33401-5012
561-659-8300
Fax: 561-835-8691
jagesq@bellsouth.net
*Counsel for Defendant Jeffrey Epstein*