UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 08-CIV-80119-MARRA/JOHNSON

JANE DOE NO. 2,

    Plaintiff,

vs.

JEFFREY EPSTEIN,

    Defendant.
_____/

Related cases:
08-80232, 08-08380, 08-80381, 08-80994,
08-80993, 08-80811, 08-80893, 09-80469,
09-80591, 09-80656, 09-80802, 09-81092
_____/

### EPSTEIN'S REPLY TO JANE DOE'S RESPONSE TO EPSTEIN'S MOTION FOR PROTECTIVE ORDER REGARDING THE DEPOSITION OF STORY COWLES

Defendant, JEFFREY EPSETIN ("Epstein"), submits his Reply to Plaintiff, Jane Doe's Response to Epstein's Motion for Protective Order Regarding the Deposition of Story Cowles ("Response") [DE #540], and states:

1. On April 29, 2010, Epstein filed his Motion for Protective Order Regarding the Deposition of Story Cowles ("Motion") [DE #536] seeking to prohibit the deposition of Story Cowles.

2. Jane Doe filed her Response [DE #540] to said Motion on May 7, 2010.

3. Jane Doe's Response, and the affidavit of her counsel, Bradley Edwards, attached as Exhibit A to said Response, is replete with unsupported factual assertions, conjecture, misrepresentations and patently false statements.

4. The thrust of Jane Doe's Response is that she should be able to depose Story Cowles ("Cowles") because: (1) Cowles visited Epstein in jail with a "third party visitors," such as Nadia Marcinkova and Sarah Kellen, which eliminated any confidentiality; (2) Epstein may have discussed transfer of assets with Cowles; (3) Cowles may have discussed the cases against Epstein with Sarah Kellen; (4) Cowles has observed and communicated with visitors coming to and from Epstein's home; and (5) Epstein may have discussed plans to flee the jurisdiction with Cowles. **None of the foregoing assertions are supported by any credible evidence.**

5. First, there is nothing to suggest that Cowles visited Mr. Epstein in jail with Nadia Marcinkova or Sarah Kellen, let alone had privileged communications in their presence. See Exhibit I to Jane Doe's Response. Jane Doe make this untenable conclusion because of a visitor's log which indicates that Ms. Marcinkova and/or Ms. Kellen visited Mr. Epstein on some of the same days Cowles visited Mr. Epstein. A cursory review of the Exhibit I will show that Cowles often visited Mr. Epstein on multiple occasions in a single day. There is nothing to even indicate that Ms. Marcinkova or Ms. Kellen was at the jail at the same time as Cowles. Indeed, Ms. Marcinkova and Ms. Kellen are listed on a separate visitor's log which does not indicate the time they arrived and does not contain the names of any attorneys or paralegals.

6. Nevertheless, Edwards filed an affidavit affirmatively stating that "Many times, Story Cowles was visiting Epstein while another third party visitor was present, such as Epstein's co-conspirators Sarah Kellen and Nadia Marcinkova," despite the fact he was not there and there exists absolutely no evidence to support such a statement. See Edwards Affidavit attached as Exhibit A to Response ("Edwards Aff.") ¶3. Describing Edwards' assertion as a misrepresentation is generous.

2

7. Next, Jane Doe asserts Epstein "likely discussed" hiding his assets and "moving them to the Channel Islands" with Cowles, "as Jane Does [sic] has heard." See Response at 2. Similarly, Jane Doe contends that Epstein "may have discussed" plans to flee the jurisdiction. Id. at 4. Jane Doe advances absolutely no support for this statement nor did she file an affidavit attesting to what she "has heard" regarding alleged asset transfers. This is nothing more than pure conjecture.

8. Jane Doe also asserts that Cowles has recently been running errands for Epstein and that she "understands" Cowles is at Epstein's home nearly every day. See Response at 3. Jane Doe goes on to speculate that "[c]ertainly, in this capacity, Cowles has personally observed, and communicated with, the visitors that come and go from Epstein's home, all potential witnesses." Id. Not unlike the other assertions in her Response, Jane Doe cites no evidence to support her conclusions. Accordingly, the Court should disregard these unsupported statements in determining Epstein's Motion. See Frasher v. Fox Distributing of S.W. Fla., Inc., 813 So. 2d 1017, 1020 (Fla. 2d DCA 2002) (holding that an affidavit "must not be based on hearsay or the plaintiff's subjective beliefs but rather on the plaintiff's personal knowledge of the defendant's actions," citing Unique Caterers, Inc. v. Rudy's Farm Co., 338 So. 2d 1067, 1071 (Fla. 1976)).

9. Other false, speculative and/or unsupported statements in Brad Edwards affidavit include:

   a. Cowles visited Epstein in jail by stating that he was either a "Paralegal," and "Attorney" or "Public Defender." See Edwards Aff. ¶4. While a few of the 159 entries in the visitor's log have Cowles' name followed by "attorney" or "public defender," there is no evidence that Cowles ever made any such representations to jail officials. Indeed, the visitor's log also lists Epstein's attorneys Jack Goldberger and Martin Weinberg as "PD" (presumably public defender) on the **same page** where they are listed as attorneys. See Exhibit I to Motion, Part 2 of 3, 8/21/08 Entries. It was obviously a mistake. If Edwards' was intending to imply that

        Cowles made misrepresentations to jail officials, any such implication is belied by the facts.

    b. On information and belief, Cowles was made to sign a confidentiality agreement with Epstein. See Edwards Aff. ¶15. What information? Edwards cites none.

    c. Cowles is at Epstein's house almost every day of the week with Sarah Kellen or Epstein or both and knows of and interacted with the visitors to Epstein's house. See Edwards Aff. ¶¶16, 18. Has Edwards personally been conducting surveillance Mr. Epstein's house? Has he personally observed Cowles "interacting" with visitors to Epstein's house? If not, how can Edwards swear to such a statement?

    d. Sarah Kellen's sole employment is working for Epstein, Cowles is her boyfriend that has spent nights with her, gone to parties with her, talked privately with her and Nadia Marcinkova, and he has even taken a trip around the world with Sarah Kellen. See Edwards Aff. ¶17. Again, Edwards make these sworn assertions without any substantiation.

10. The Court should disregard Edwards' affidavit in determining Epstein's Motion. The assertions in his affidavit are just as unsupported and speculative as the statements in Jane Doe's Response. Jane Doe and Edwards use these groundless statements to create the false impression that Cowles has discoverable information. Yet, as demonstrated herein, Edwards fails to cite any evidence to support his assertions.

11. In addition, Jane Doe maintains that Cowles should be required make the representation that he has not discussed the cases against Epstein with Sarah Kellen "under oath at a deposition." See Response at 3. Yet Cowles submitted an affidavit **under oath** on that very subject. Requiring him to appear at a deposition to confirm what he has already attested to under oath, in his affidavit, would be a waste of the parties' time.

12. Last, Edwards tries to justify going back on his agreement not to depose Mr. Cowles by stating he "did not know Mr. Cowles full role or involvement with Jeffrey Epstein." However, it is obvious that Edwards knew of the relationship between Cowles and Sarah Kellen

4

as he was seeking to depose Cowles, in part, to discover Sarah Kellen's whereabouts. See Edwards Aff. ¶¶6-8. He also states that if "Sarah Kellen testified truthfully and completely then there would be no need for Mr. Cowles testimony." Id. ¶9. Given that Sarah Kellen is a defendant in companion cases, it should hardly have been a surprise to Edwards that Ms. Kellen would invoke her Constitutional Rights under the Fifth Amendment. Ultimately, Edwards is attempting to make excuses for going back on his word not to depose Cowles. The Court should not condone such double dealing.

13. For the foregoing reasons, the Court should grant Epstein's Motion and prohibit the deposition of Cowles.

### Certificate of Service

I HEREBY CERTIFY that a true copy of the foregoing was electronically filed with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the following Service List in the manner specified by CM/ECF on this 17th day of May, 2010:

Respectfully submitted,

By: /s/ Jack Alan Goldberger.
Jack Alan Goldberger, Esq.
Florida Bar No. 262013
Atterbury Goldberger & Weiss, P.A.
250 Australian Avenue South
Suite 1400
West Palm Beach, FL 33401-5012
561-659-8300
Fax: 561-835-8691
jagesq@bellsouth.net
*Counsel for Defendant Jeffrey Epstein*

### Certificate of Service
### Jane Doe No. 2 v. Jeffrey Epstein
### Case No. 08-CV-80119-MARRA/JOHNSON

| | |
|---|---|
| Stuart S. Mermelstein, Esq. | Brad Edwards, Esq. |
| Adam D. Horowitz, Esq. | Farmer, Jaffe, Weissing, Edwards, Fistos & |

Mermelstein & Horowitz, P.A.
18205 Biscayne Boulevard
Suite 2218
Miami, FL 33160
305-931-2200
Fax: 305-931-0877
ssm@sexabuseattorney.com
ahorowitz@sexabuseattorney.com
*Counsel for Plaintiffs
In related Cases Nos. 08-80069, 08-80119, 08-80232, 08-80380, 08-80381, 08-80993, 08-80994*

Robert C. Josefsberg, Esq.
Katherine W. Ezell, Esq.
Podhurst Orseck, P.A.
25 West Flagler Street, Suite 800
Miami, FL 33130
305 358-2800
Fax: 305 358-2382
rjosefsberg@podhurst.com
kezell@podhurst.com
*Counsel for Plaintiff*

Lehrman, PL
425 N. Andrews Avenue
Suite 2
Fort Lauderdale, FL 33301
Phone: 954-524-2820
Fax: 954-524-2822
brad@pathtojustice.com
*Counsel for Plaintiff in Related Case No. 08-80893*

Paul G. Cassell, Esq.
*Pro Hac Vice*
332 South 1400 E, Room 101
Salt Lake City, UT 84112
801-585-5202
801-585-6833 Fax
cassellp@law.utah.edu
*Co-counsel for Plaintiff Jane Doe*

Isidro M. Garcia, Esq.
Garcia Law Firm, P.A.
224 Datura Street, Suite 900
West Palm Beach, FL 33401
561-832-7732
561-832-7137 F
isidrogarcia@bellsouth.net
*Counsel for Plaintiff in Related Case No. 08-80469*